Breck E. Milde (SBN 122437)
bmilde@terralaw.com
TERRA LAW LLP
333 W. Santa Clara St., Ste. 910
San Jose, CA 95113
Telephone:  (408) 299-1200

Attorney for Plaintiff
Jing Xu

UNITED STATES DISTRICT COURT

NORTHERN DIVISION OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JING XU,<br><br>             Plaintiff,<br><br>     vs.<br><br>BETTER MORTGAGE CORPORATION, a California corporation, and THE MONEY SOURCE, INC., a New York corporation,<br><br>             Defendants. | CASE NO.<br><br>**COMPLAINT FOR VIOLATION OF FAIR CREDIT REPORTING ACT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jing Xu alleges as follows:

1. This Court has jurisdiction under 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391 (b) (1) and (2).

3. This case is brought under the provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq.*  Congress enacted the FCRA to ensure accurate reporting about the "credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C. § 1681(a)(2).

4. Plaintiff Jing Xu is an individual resident of the State of California, and resides

within this judicial district.  Plaintiff is a "consumer" as defined in 15 U.S.C. § 1681a(c).

5. Defendant Better Mortgage Corporation ("BMC") is a California corporation doing business in the State of California and within this judicial district.  BMC is a "furnisher" of information to credit reporting agencies, as defined under 12 C.F.R. § 1022.41(c).

6. Defendant The Money Source, Inc. ("TMS") is a New York corporation doing business in the State of California and within this judicial district.  TMS is also a "furnisher" of information to credit reporting agencies, as defined under 12 C.F.R. § 1022.41(c).

7. Defendants BMC and TMS are referred to herein as "Defendants."

8. In or about September 2021, plaintiff sought to refinance his residence located in Palo Alto, California through BMC.  BMC is an online entity that originates and services residential home mortgages.  BMC is licensed in the State of California with the Department of Real Estate.

9. On or about September 23, 2021, plaintiff successfully closed his refinancing loan with BMC.  The total loan amount of the loan was $1,997,285, payable over 30 years, at a fixed rate of 2.75%.

10. On or about October 17, 2021, plaintiff received an email from BMC providing information regarding his on-line account with BMC's loan servicer, TMS.  In this email, plaintiff was advised to visit the TMS website to finish setting up his account.  Plaintiff was further advised of "some important things to keep in mind."  These important things included the following:

- Recurring payments have been turned off just in case your loan is transferred to another servicer.
- If Better retains the servicing of your loan, automatic payments will be turned on.
- If your loan is transferred, we will send you an email to let you know.

11. Pursuant to said October 17, 2021 email, plaintiff did complete setting up his account with TMS, as instructed, and on or about November 3, 2021, plaintiff received confirmation that his account has been set up.

12. Prior to setting up his account with TMS to provide for automatic payments, plaintiff manually made his first loan payment online for the October 2021 payment, which payment was due on November 1, 2021.

13. Plaintiff heard nothing further from BMC or TMS after setting up the account with TMS. Plaintiff received no notice that the loan had been transferred, and reasonably assumed, based on the email he received from BMC, that automatic payments would be activated.

14. On or about January 5, 2022, plaintiff received an alert from Chase, a financial institution with whom plaintiff had a credit relationship. The alert advised him of derogatory information reported by a credit reporting agency, due to a late payment added to his credit history.

15. Plaintiff thereafter followed up with BMC, and learned that, contrary to the notice provided in the October 17, 2021 email, BMC had not activated the automatic payments for the account that plaintiff had set up with TMS, and that BMC had transferred the loan to another institution, Ally Bank. Plaintiff learned that his payment for November 2021 which was due on December 1, 2021 had not been automatically made despite his having set up the automatic loan payments with TMS as instructed by BMC.

16. Plaintiff received no notice by email, or through any other means, regarding the transfer of the loan to Ally Bank. Nor did BMC or its servicer, TMS, advise plaintiff that his November 2021 loan payment had not been made. By the time that plaintiff learned that the payment had not been made, more than 30 days had passed, and Defendants published a derogatory report to the applicable credit reporting agencies.

17. After learning of the events alleged hereinabove, plaintiff contacted TMS in an attempt to obtain redress and correction of his credit report. Upon speaking with TMS customer service, some of the TMS representatives agreed that BMC/TMS was at fault, however, the credit reporting agencies were not advised of BMC/TMS's error.

18. Also, after learning of the derogatory credit reporting, plaintiff contacted one or more of the national credit reporting agencies, i.e., Experian, Equifax, and TransUnion.

1  Plaintiff was advised that they would not correct the derogatory credit reporting provided by
2  Defendants.
3       19.    Defendants were notified of plaintiff's dispute as to the derogatory credit report
4  disseminated by them.  Defendants refused to correct the inaccurate and incomplete reporting to
5  the credit reporting agencies.
6       20.    Defendants violated the FCRA by, among other things, willfully and/or
7  negligently failing to review all relevant information available to them, failing to conduct a
8  reasonable investigation after being notified of plaintiff's dispute, and by failing to correct or
9  delete inaccurate and incomplete information provided to the credit reporting agencies.
10      21.    As a direct and proximate result of Defendants' violation of the FCRA, plaintiff
11 has suffered adverse action, including but not limited to denial of credit at a more favorable
12 interest rate, and lost the opportunity to qualify for a loan to purchase real property for use as an
13 income property or otherwise.
14      22.    As a direct and proximate result of BMC's violation of the FCRA, plaintiff has
15 suffered actual damages, including but not limited to the inability to refinance his home loan at
16 a lower interest rate, inability to qualify for a loan to purchase a second property for use as an
17 income property, as well as embarrassment, anguish, emotional and mental pain.
18      23.    As a further consequence of BMC's violation of the FCRA, Defendants may be
19 held liable to plaintiff for statutory and punitive damages, and plaintiff is entitled to recover his
20 attorneys' fees and legal costs incurred.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

1. For actual damages in the amount of $289,925 or according to proof;
2. For statutory damages;
3. For punitive damages according to proof;
4. For pre-judgment interest;
5. For attorneys' fees and legal costs; and;

6. For such other and further legal and/or equitable relief as this Court may deem proper.

Dated: October 25, 2023                    TERRA LAW LLP

By: _____
Breck E. Milde
Attorneys for Plaintiff Jing Xu