UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JING XU,<br><br>        Plaintiff,<br><br>    v.<br><br>BETTER MORTGAGE CORPORATION, et al.,<br><br>        Defendants. | Case No. 5:23-cv-05510-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 56 |

Plaintiff Jing Xu brings this lawsuit against defendants Better Mortgage Corporation and The Money Source alleging negligent misrepresentation and violations of the Fair Credit Reporting Act (FCRA) and California's Unfair Competition Law (UCL). Better Mortgage moves to dismiss Xu's first amended complaint under Rule 12(b)(6). For the following reasons, the Court grants in part and denies in part Better Mortgage's motion to dismiss.

## BACKGROUND

In September 2021, Xu sought to refinance his home and obtained a loan of nearly $2 million from Better Mortgage.[1] In October 2021, Xu purportedly received an email from Better Mortgage instructing him to set up an online account with The Money Source, Better Mortgage's loan servicer, and stating that automatically recurring loan payments would be turned on unless his loan was transferred, in which case Xu would get an email notification. Xu thereafter set up an account with The Money Source and made his first loan payment.

In January 2022, Xu allegedly received an alert from Chase Bank informing him that derogatory information about him had been reported by a credit agency due to a late payment. Xu

---

[1] For the purposes of Better Mortgage's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Xu's first amended complaint.

alleges that he then learned that automatic payments had not started after his first payment because his loan had been transferred from The Money Source to Ally Bank. Xu alleges that Better Mortgage failed to notify him of this change.

According to Xu, neither Better Mortgage nor The Money Source informed him that a second loan payment due in November 2021 had not been made, after which the defendants allegedly furnished a derogatory report to various credit agencies. Specifically, Xu alleges that The Money Source sent a derogatory report to TransUnion stating that Xu's account was 30 days past due. When Xu contacted The Money Source about the report, The Money Source purportedly acknowledged that the defendants were at fault but nonetheless refused to correct it. Xu also allegedly contacted TransUnion and other national credit reporting agencies to dispute the report, and The Money Source was notified by TransUnion about the dispute. The Money Source and Better Mortgage allegedly took no action to correct the report by modifying, deleting, or blocking it. Xu alleges that the derogatory report and defendants' failure to correct it adversely affected his ability to access loans at a lower rate and to qualify for a loan to purchase an additional property.

Xu originally brought a claim solely under the FCRA. He claimed that defendants violated that federal law by willfully or negligently failing to review all relevant credit information available to them, conduct a reasonable investigation after being notified of Xu's dispute, or correct inaccurate information provided to the credit reporting agencies. Better Mortgage moved to dismiss Xu's complaint for failure to state a claim. The Court granted the motion to dismiss with leave to amend. Xu then filed an amended complaint.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not do so, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal

1  theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To
2  survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief
3  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**ANALYSIS**

**I.     Xu plausibly alleges that Better Mortgage violated the FCRA.**

Xu contends that Better Mortgage violated the FCRA because The Money Source, when acting as Better Mortgage's agent, furnished inaccurate information to TransUnion concerning Xu's missed payment on his loan and failed to correct its inaccurate report after it was notified of Xu's dispute. Xu argues that an agency relationship existed between Better Mortgage and The Money Source because Better Mortgage's designation of The Money Source as its loan servicer and its instruction to Xu to establish an online account with The Money Source to make payments on his loan created the reasonable impression that The Money Source was its authorized agent.

The FCRA requires, among other things, that persons "not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," and "not furnish information relating to a consumer to any consumer reporting agency if – (i) the person has been notified by the consumer … that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a). It also requires that "a person who (A) regularly … furnishes information to one or more consumer reporting agencies … and (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, … promptly notify the

3

consumer reporting agency of that determination and provide to the agency any corrections to that information." *Id.*

The FCRA further requires that any furnisher of credit information "conduct an investigation with respect to the disputed information" after receiving notice of "a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" and, "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information." 15 U.S.C. § 1681s-2(b). Finally, the statute requires that the credit reporting agency that received derogatory information "provide notification of the [consumer] dispute to any person who provided any item of information in dispute." 15 U.S.C. § 1681i(a)(2).

Xu's original complaint lacked factual allegations showing that Better Mortgage had furnished derogatory information to a credit agency because the complaint did not identify what information was conveyed or which credit reporting agencies were contacted. Xu also had not adequately alleged that the relevant credit reporting agencies had notified Better Mortgage that Xu disputed the report. Xu has remedied those defects in his first amended complaint. He now alleges that The Money Source reported to TransUnion that Xu's account was 30 days past due and that, on February 8, 2022 and March 10, 2022, TransUnion notified The Money Source that Xu disputed the report. Although Xu does not allege that TransUnion notified Better Mortgage directly, Xu alleges that Better Mortgage is liable for the actions of its agent, The Money Source.

Better Mortgage again moves to dismiss Xu's FCRA claim, now contending that he fails to plausibly allege that The Money Source acted as Better Mortgage's agent.

An agency relationship is created when one entity—the agent—possesses actual or apparent authority to represent another entity—the principal—in dealings with third persons. *Frankl v. HTH Corp.*, 650 F.3d 1335, 1367 (9th Cir. 2011). "An agency relationship may be created through actual or apparent authority. Actual authority arises through the principal's assent that the agent take action on the principal's behalf …. Apparent [or ostensible] authority arises by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized

4

and the belief is traceable to the manifestation." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (cleaned up). A principal may be vicariously liable for acts of its agents that fall within the scope of their authority. *Meyer v. Holley*, 537 U.S. 280, 280 (2003). Vicarious liability under an apparent agency theory is limited to the scope of responsibility that is apparently authorized. *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982).

The Ninth Circuit has not decided whether a party can be vicariously liable under the FCRA. Generally, however, courts presume that well-established common law principles apply to federal statutes absent statutory text or congressional intent to the contrary. *See, e.g.*, *State Eng'r of State of Nevada v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nevada*, 339 F.3d 804 (9th Cir. 2003) (cleaned up) ("It is axiomatic that statutes are presumed not to disturb the common law, unless the language of a statute be clear and explicit for this purpose.); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (cleaned up) ("Congress is understood to legislate against a background of common law adjudicatory principles …. [W]here a common law principle is well established … , the courts may take it as given that Congress has legislated with an expectation that the principle will apply."). Consistent with this principle, both district courts within the Ninth Circuit and other Circuits have permitted vicarious liability for FCRA violations. *See, e.g.*, *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1212 (C.D. Cal. 2007) (holding that corporations can be held vicariously liable for the FCRA violations of their agents); *Myers v. Bennett Law Offices,* 238 F. Supp 2d 1196, 1202 (D. Nev. 2002) (same); *Mahajan v. Kumar*, No. CV F06-1728AWISMS, 2007 WL 1279504, at *5 (E.D. Cal. Apr. 30, 2007) (explaining that although "[t]he FCRA provides no statutory basis for vicarious liability," "courts look to common law bases for holding an entity vicariously liable for the actions of its agent"); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972–973 (4th Cir. 1987) (applying the common law doctrines of *respondeat superior* and apparent authority to permit vicarious liability for violations of the FCRA).

The Court finds the Sixth Circuit's reasoning in *Jones v. Federated Financial Reserve Corporation*, 144 F.3d 961 (6th Cir. 1998), particularly persuasive. In *Jones*, the Sixth Circuit

examined of the purpose of the FCRA to determine whether it permits vicarious liability. *Id.* at 965–66. It explained that Congress enacted the FCRA to "protect[] consumers from inaccurate information in consumer reports and [establish] credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Id.* at 965. The Court determined that allowing vicarious liability for FCRA violations is consistent with the statute's ultimate deterrent purpose because it allocates responsibility to those in the best position to protect consumers, explaining that "[t]he FCRA's deterrence goal would be subverted if a corporation could escape liability for a violation that could only occur because the corporation cloaked its agent with the apparent authority." *Id.* at 966. Because nothing in the text or purpose of the FCRA suggests Congress sought to depart from background common law principles of liability, this Court agrees with *Jones* that the FCRA should be construed to permit vicarious liability.

A loan servicer is undoubtedly an agent of the lender whose loan is being serviced. The question remains, however, how far that agency extends. Because liability on an ostensible agency theory does not extend beyond the scope of responsibility that is apparently authorized, Better Mortgage is liable for The Money Source's credit reporting actions if those actions fell within The Money Source's apparent authority.

There can be no dispute that Better Mortgage's instructions to Xu to set up an account with The Money Source to make payments on his loan gave Xu a reasonable understanding that The Money Source was authorized to act as Better Mortgage's agent for the purposes of collecting and processing Xu's loan payments. Xu contends that Better Mortgage's representation that The Money Source would act as its agent for purposes of servicing his loan also created the reasonable understanding that The Money Source would act as Better Mortgage's agent for purposes of credit reporting.

Better Mortgage disputes this contention. But the precise scope of The Money Source's apparent authority is a factual matter that cannot be definitively resolved on the pleadings. For the purposes of Rule 12(b)(6), Xu has pleaded enough facts to plausibly allege that he reasonably understood that The Money Source's authorization to service his loan included credit reporting as

6

well as collecting and processing payments.

Better Mortgage also argues that Xu fails to state an FCRA claim because he does not plausibly allege that The Money Source furnished inaccurate credit information to TransUnion. The Money Source purportedly reported to TransUnion that Xu had failed to make a loan payment and Xu concedes that he did, in fact, fail to make that payment. According to Better Mortgage, this means that the information that that The Money Source furnished was factually accurate and thus provides no basis for FCRA liability.

Even though the FCRA "does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including [the Ninth Circuit], have imposed such a requirement." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Better Mortgage's argument is nonetheless unavailing because factually accurate information can be inaccurate within the meaning of the FCRA if its presentation is misleading. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (quoting *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir. 1998)) ("[A] credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"). In *Gorman*, the Ninth Circuit held that "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Gorman*, 584 F.3d at 1163 (quoting *Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 150 (4th Cir. 2008)). The court explained that "holding otherwise would create a rule that, as a matter of law, an omission of the disputed nature of a debt never renders a report incomplete or inaccurate," and concluded that such a rule would not only "intimidate consumers into giving up bona fide disputes by paying debts not actually due to avoid damage to their credit ratings, but … also contravene[] the purpose of the FCRA, to protect against 'unfair credit reporting methods.'" *Gorman*, 584 F.3d at 1163.

Here, Xu plausibly alleges that the technically accurate information The Money Source allegedly furnished to TransUnion—that Xu's loan payment was overdue—was "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions."

7

*Gorman*, 584 F.3d at 1163. A report that Xu's payment was 30 days past due without an accompanying explanation that Xu had followed his lender's instructions to set up automatic payments and believed he was, in fact, making timely payments can plausibly be considered misleading in such a way as to unfairly and adversely affect credit decisions—as Xu alleges The Money Source's report actually did in his individual case.

Better Mortgage also contends that even if technically accurate information can be misleading under certain circumstances, a complaint must still contain specific allegations that demonstrate *how* that information was misleading. *See, e.g.*, *Ohaion v. Bank of Am., N.A.*, 2023 WL 2349377, at *5 (D. Nev. Mar. 2, 2023). But Xu's first amended complaint does exactly that. He alleges that he reasonably assumed, following Better Mortgage's express representations to him, that automatic payments on his loan were activated and that he was making his payments. Those facts make clear that a report that his account was overdue, without an explanation that his missed payment occurred through no fault of Xu's own, could plausibly be misleading.

## II.     Xu fails to state a claim for negligent misrepresentation.

Xu also contends that Better Mortgage negligently misrepresented that it would notify him if his loan was transferred to a different servicer and automatic payments were accordingly terminated. Better Mortgage contends, however, that such predictions about the future cannot provide the basis for negligent misrepresentation claims.

The elements of negligent misrepresentation are a (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) with ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Home Budget Loans, Inc. v. Jacoby & Meyers L. Offs.*, 207 Cal. App. 3d 1277, 1285 (1989).

Xu has alleged facts plausibly establishing the third, fourth, and fifth elements. Better Mortgage's alleged representation that automatically recurring loan payments would be turned on unless Xu's loan was transferred, in which case he would be notified, was plausibly intended to induce his reliance, relieving Xu of the responsibility of manually making payments each month and monitoring the potential transfer of his loan. Xu alleges that he did not know that the servicing

of his loan was transferred and that automatic payments had terminated; that he justifiably relied on Better Mortgage's representation that it would notify him under such circumstances; and that, as a result, his credit score was adversely affected, hindering his ability to access loans at a lower rate and to qualify for a loan to purchase an additional property.

Xu has not, however, alleged facts sufficient to show that Better Mortgage did not have reasonable grounds for believing the truth of its statement that Xu would be notified upon the transfer of his loan and termination of automatic payments. And more fundamentally, Xu cannot show the first element: misrepresentation of a *past or existing* material fact. *See Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 324286, at *7, *11 (N.D. Cal. Jan. 27, 2016) (explaining that negligent misrepresentation pertains only to past or existing facts, not predictions or promises about future events). BMC's representation to Xu about what would happen if his loan was transferred to a different servicer was a statement about a condition that might occur in the future, not about present or existing facts.

The facts alleged here are distinguishable from *Charnay v. Cobert*, 145 Cal. App. 4th 170 (2006), on which Xu relies. In that case, the court held that the plaintiff had a claim for negligent representation where her lawyer had lied to her about her likelihood of prevailing in litigation and recovering attorney fees and had done so in order to induce her to continue the litigation. *Id.* at 184–85. Although the lawyer's misrepresentation concerned certain future events, such as the plaintiff's ability to recover attorney fees later in the lawsuit, the misrepresentation fundamentally concerned the lawyer's assessment of the present strength of the plaintiff's case. Better Mortgage's representation to Xu, by contrast, exclusively concerned actions that would be taken in the future if specified and uncertain future events came to pass.

Because Xu does not allege that Better Mortgage's purported misrepresentations concerned any past or existing facts or that it had no reasonable grounds for its statement that Xu would be notified by email if his loan was transferred, his amended complaint fails to state a negligent misrepresentation claim.

**III.     Xu plausibly alleges that Better Mortgage violated the UCL.**

Xu also contends that Better Mortgage's misconduct violates the UCL, which prohibits

9

unfair competition, "includ[ing] any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Pros. Code § 17200. Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996) ("Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."). "The unlawful prong of the UCL borrows violations of other laws and treats them as unlawful practices, which the UCL then makes independently actionable." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (cleaned up). Thus, to "state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1133 (2014).

Better Mortgage concedes that "[Xu's] UCL claim rises and falls with his FCRA and negligent misrepresentation claims." Dkt. No. 56, at 16. Because Xu's amended complaint adequately states an FCRA claim, it also states a valid UCL claim.

## CONCLUSION

For the foregoing reasons, the Court grants Better Mortgage's motion to dismiss Xu's negligent misrepresentation claim but denies its motion to dismiss his FCRA and UCL claims. Because the statement on which Xu premises his negligent misrepresentation claim is a prediction about the future that, as a matter of law, cannot provide the basis for such a claim, no amendments could overcome the legal inadequacy of his negligent misrepresentation claim. The Court's dismissal of that claim is therefore without leave to amend.

**IT IS SO ORDERED.**

Dated: January 3, 2025

P. Casey Pitts
United States District Judge

10