UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JING XU,<br><br>        Plaintiff,<br><br>    v.<br><br>BETTER MORTGAGE CORPORATION, et al.,<br><br>        Defendants. | Case No. 23-cv-05510-NW<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 76, 78 |

On March 31, 2025, Defendants The Money Source ("Money Source") and Better Mortgage Corporation ("Better") (collectively, "Defendants") filed motions for summary judgment. ECF Nos. 76, 78. Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the hearing set for July 29, 2025, and DENIES the motions in part and GRANTS the motions in part.

## I.   BACKGROUND[1]

This order assumes the reader is familiar with the facts and record as set forth in the January 3, 2025 Order Granting in Part and Denying in Part Motion to Dismiss ("MTD Order"). ECF No. 72. Below are the facts pertinent to Defendants' motions for summary judgment.

On September 23, 2021, Xu refinanced a home loan for a property in Palo Alto, California with Better. On October 17, 2021, Xu received an email from Better with information about his online account through Better's loan servicer, Money Source. The email stated "[y]our account for [the property] has already been created." Parseghian Decl., Ex. D, ECF No. 79-4 ("Better

---

[1] The Court relies only on undisputed facts: facts alleged by Plaintiff in the complaint, facts from Plaintiff's deposition testimony, and facts that Plaintiff indicated are undisputed.

Email"). It also noted "[t]o finish setting it up, visit the [Money Source] website and use your account number." *Id.* Xu was further advised in the email of "some important things to keep in mind," including:

- Recurring payments have been turned off just in case your loan is transferred to another servicer.
- If Better retains the servicing of your loan, automatic payments will be turned on.
- If your loan is transferred, we'll send you an email to let you know.

*Id.* On November 3, 2021, Xu registered for Money Source's borrower portal, enrolled in paperless communication, and successfully submitted a one-time payment online.

On November 5, 2021, Money Source emailed Xu notice that his December mortgage billing statement was ready. Also on November 5, 2021, Money Source mailed Xu a "Notice of Mortgage Servicing Transfer" notifying him that the servicing of his loan would be transferred to Ally Bank effective January 4, 2022.

Believing he was enrolled in automatic payments, Xu did not open the November 5, 2021 email regarding his billing statement and missed his December payment. Money Source reported the loan delinquency to Trans Union credit bureau in early January 2022.

After learning this, Xu contacted Defendants to resolve the issue and correct his credit report. Xu also contacted several of the national credit reporting agencies, including Trans Union. Money Source was notified by Trans Union sometime in March 2022 that Xu was disputing the report regarding his delinquent payment. Money Source investigated its loan servicing files for Xu's loan but did not adjust the report.

On October 25, 2023, Xu sued Defendants for, among other things, violations of the Fair Credit Reporting Act ("FCRA"). Compl., ECF No. 1. Money Source answered, *see* Ans., ECF No. 20, but Better moved to dismiss. Mot. to Dismiss, ECF No. 11. The Court granted Better's motion, and Xu filed an amended complaint on July 30, 2024. First Am. Compl. ("FAC"), ECF No. 54. Again, Money Source answered, *see* Ans., ECF No. 57, but Better moved to dismiss. Mot. to Dismiss FAC, ECF No. 56. The Court granted in part and denied in part Better's motion to dismiss the FAC. MTD Order. Better answered on January 16, 2025, *see* Ans., ECF No. 73,

1   then moved for summary judgment on March 31, 2025. Better Mot. for Sum. J. ("Better MSJ"),
2   ECF No. 78. Money Source also moved for summary judgment on March 31, 2025. Money
3   Source Mot. for Sum. J. ("Money Source MSJ"), ECF No. 76. Xu opposed both motions. Opp'n
4   to Better MSJ ("Better Opp'n"), ECF No. 82; Opp'n to Money Source MSJ ("Money Source
5   Opp'n"), ECF No. 85. Defendants replied. Reply In Support of Money Source MSJ ("Money
6   Source Reply"), ECF No. 88; Reply In Support of Better MSJ ("Better Reply"), ECF No. 91.

7   Defendants also filed objections to the evidence submitted by Plaintiff in support of his
8   opposition to their motions for summary judgment. Money Source Objections, ECF No. 89;
9   Better Objections to Milde Decl., ECF No. 92; Better Objections to Xu Decl., ECF No. 93. These
10  objections are improper as "[a]ny evidentiary and procedural objections to the motion must be
11  contained within the brief or memorandum." Civ. L.R. 7-3(c). The Court therefore did not
12  consider these objections. *See Carrasco v. Bank of Am.,* No. 20-CV-05833-JST, 2022 WL
13  20242801, at *6 n.3 (N.D. Cal. Apr. 22, 2022).

14  **II.   LEGAL STANDARD**

15  Summary judgment is proper where the pleadings, discovery and affidavits show that there
16  is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
17  law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to
18  make a showing sufficient to establish the existence of an element essential to that party's case,
19  and on which that party will bear the burden of proof at trial . . . since a complete failure of proof
20  concerning an essential element of the nonmoving party's case necessarily renders all other facts
21  immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might
22  affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is
23  genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
24  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the
25  Court does not make credibility determinations or weigh conflicting evidence regarding material
26  facts. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.
27  1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a
28  light most favorable to the nonmoving party. *Id*. at 631. The nonmoving party has the burden of

identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the court may properly grant summary judgment in favor of the moving party. *Id.*

### III.  DISCUSSION

In the operative[2] first amended complaint, Xu brings two claims against both Defendants: (1) violation of FCRA and (2) violation of California's Unfair Competition Law ("UCL"). Because there are genuine disputes of material facts such that a "reasonable jury could return a verdict for" Xu, the nonmoving party, the Court denies summary judgment on the first claim. *Anderson*, 477 U.S. at 248. Because Xu's UCL claim is preempted by federal law and Defendants are entitled to judgment as a matter of law, the Court grants summary judgment on the second claim.

#### A.  FCRA Claim

As stated in the MTD Order, FCRA requires persons "not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1). Additionally, a person "shall not furnish information relating to a consumer to any consumer reporting agency if—(i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *Id.*

FCRA also requires that "a person who (A) regularly . . . furnishes information to one or more consumer reporting agencies . . . and (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, . . . promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information." § 1681s-2(a)(2). After receiving notice of a dispute from a consumer reporting agency, the furnisher of information must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer

---

[2] On January 3, 2025, the Court dismissed Xu's negligent misrepresentation claim without leave to amend. *See* MTD Order.

4

>> reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

§ 1681s-2(b)(1). Only the failure to report a bona fide dispute, or "a dispute that could materially alter how the reported debt is understood" gives rise to liability under FCRA. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

Money Source argues that it complied with FCRA by reporting accurate information to the credit reporting agency and by conducting a reasonable investigation. Money Source MSJ at 8-11. Similarly, Better argues that Money Source's reporting was accurate, that Money Source conducted a reasonable investigation, and that Xu's dispute was not bona fide, or a dispute that would materially alter how Xu's reported debt is understood. Better MSJ at 12-14; Better Reply at 8-10, ECF No. 91. Defendants have failed to meet their burden on summary judgment because their arguments rely on material facts that are disputed in this case.

    **1.**  **Accuracy of the Reporting and the Nature of the Dispute**

To prevail on § 1681s-2(b) claims, "FCRA plaintiffs must prove that the furnisher reported inaccurate information." *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *6 (N.D. Cal. Dec. 20, 2017) (citations omitted). Information in a report can be inaccurate "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info.*

5

*Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citing *Gorman*, 584 F.3d at 1163).

Here, the record is replete with factual disputes regarding the accuracy of Money Source's reporting and Xu's dispute. To start, while the words of Better's October 17, 2021 email are plain, their meaning is less so. The first bullet states that automatic payments are turned off, but the next states that they will be turned on if Better retains the servicing of Xu's loan. No party—Xu or either Defendant—has elucidated what is meant by "if Better retains servicing of [Xu's] loan." Better Email. What is clear is Better's statement that Xu will be notified **by email** of any loan transfers. The parties dispute whether Xu was notified, but they agree that if notification occurred, it was not by email. A reasonable jury could find that Xu, who undisputedly spent time on November 3, 2021 confirming his online account with Money Source, making an online payment, and, critically, enrolling in paperless communications, reasonably believed that automatic payments on his loan would be automatically turned on absent an email from Better regarding the transfer of his loan. A reasonable jury could find that considering this, Xu reasonably believed that his loan payments were being made automatically when they were not, thus causing him to miss a payment. Finally, a reasonable jury could find that the lack of an explanation of these events to a credit reporting agency could "materially alter how the reported debt is understood." *Gorman*, 584 F.3d at 1163. Thus, summary judgment is not appropriate as to the accuracy of the reporting and whether Xu's dispute was bona fide.

### 2. Reasonable Investigation

After receiving notice from a credit reporting agency, a furnisher has an obligation to conduct a "reasonable" investigation. *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012). A furnisher's investigation "is not necessarily unreasonable because it results in a . . . conclusion [that] turns out to be inaccurate" or incorrect. *Id.* A reasonable investigation "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman*, 584 F.3d at 1155.

Because of the jury's "unique competence" in evaluating reasonableness, "summary judgment is generally an inappropriate way to decide questions of reasonableness." *Id.,* at 1157 (simplified). However, when "only one conclusion about the conduct's reasonableness is

1  possible," a court may grant summary judgment "on questions of reasonableness." *Id.*

2  Defendants contend that the evidence shows Money Source's investigation was reasonable
3  because it "conducted a thorough investigation of its loan servicing file after receiving a notice of
4  Plaintiff's dispute from Trans Union." Better MSJ at 16. As evidence of reasonableness, Money
5  Source states that it reviewed "payment records; e-mail communications between XU and TMS;
6  and all TMS programs in which XU had enrolled in online" and unearthed facts that confirmed
7  Money Source's report was "in fact accurate." Decl. ISO Money Source MSJ ¶¶ 19-20, ECF No.
8  80. But the fact Money Source investigated its own file, with nothing more, does not mean its
9  investigation was reasonable. Indeed, as Xu notes, the investigation did not reveal Better's "email
10 [that] was the basis for Plaintiff's reasonable belief that automatic payments would be
11 implemented unless he was advised by email that the loan servicing had been transferred to
12 another servicer." Money Source Opp'n at 9. Viewing this evidence and the inferences to be
13 drawn from in a light most favorable to Xu, the nonmoving party, more than one conclusion about
14 Money Source's conduct is possible. The Court denies summary judgment as to the
15 reasonableness of the investigation and reserves questions of reasonableness for the jury.

### 3. Alleged Damages

17 FCRA violations can either be negligent or willful. *Carrasco v. Bank of Am.*, No. 20-CV-
18 05833-JST, 2022 WL 20242801, at *4 (N.D. Cal. Apr. 22, 2022); *see also* § 1681n (willful),
19 § 1681o (negligent). "To prove a negligent violation, a plaintiff must show that the defendant
20 acted pursuant to an objectively unreasonable interpretation of the statute." *Marino v. Ocwen*
21 *Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020).

22 In contrast, "[a] willful violation covers acts done knowingly or recklessly in disregard of
23 the FCRA's requirements." *Messano v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1309, 1315–16
24 (N.D. Cal. 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). Willful
25 noncompliance entitles a plaintiff to punitive damages, attorney's fees and costs, as well as actual
26 or statutory damages. § 1681n. Negligent violations entitle the plaintiff to only actual damages
27 and reasonable costs and fees. § 1681o. "Actual damages may include damages for humiliation,
28 mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no

7

out-of-pocket losses." *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015), *aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC*, 702 F. App'x 561 (9th Cir. 2017) (citations omitted). In addition, "a denial of credit is not a requirement to prove actual damages under the FCRA." *Id.*

In reliance on the same evidence discussed above relating to the accuracy of Money Source's report, the nature of Xu's dispute, and the reasonableness of the investigation, Better argues that it did not willfully or negligently violate FRCA. For the same reasons noted by the Court above, Better's request for summary judgment relating to these issues is denied.

Better also argues that "there is no evidence showing that Plaintiff suffered actual damages that are cognizable under the FCRA." Better MSJ at 17. Specifically, Better contends that Xu fails to show the actual damages alleged in the complaint, or the damages Xu alleged are ones that are not recoverable under FCRA.

In the FAC, Xu alleges that "[a]s a direct and proximate result of Defendants' violation of the FCRA," he "suffered actual damages, including but not limited to [1] the inability to refinance his home loan and other real property loans at a lower interest rate, [2] inability to qualify for a loan to purchase a second property for use as an income property, [3] as well as embarrassment, anguish, emotional and mental pain." FAC ¶ 23. The Court addresses each in turn.

First, Better argues that Xu's inability to refinance his home loan and other real property loans at a lower interest rate was not the result of Defendants' reporting because Xu's home loan refinance application was denied based on a credit report from November 4, 2021, before the reporting occurred. Better MSJ at 17-18; Better Reply at 10. Xu argues that is untrue. He states that although he sought to refinance his home loan in November 2021 (before Defendants' reporting), he was denied the loan in April 2022, after Defendants' inaccurate reporting, which lowered his credit score. Better Opp'n at 19.

As an initial matter, "no case has held that a denial of credit is a prerequisite to recovery under the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). The denial of Xu's home loan refinance application in April 2022 is not a prerequisite to his recovery of actual damages under FCRA.

8

Additionally, Better misconstrues Xu's evidentiary burden. To create an issue of fact regarding causation Xu need not show that Defendants' actions were the only causes of his loss, only that Defendants' reporting was a "substantial factor" in his loss. *Robbins*, 2017 WL 6513662, at *17. Here, Xu testified that he abandoned his refinancing efforts with Bank of America because of Defendants' reporting:

> Q. This discusses in part, We will need to cancel loan due to inactivity.
>
> A. Hmm-mmm.
>
> Q. Do you have any understanding what is meant by "inactivity"?
>
> A. They need me to fix my credit first because the estimate was based on my previous credit report. So in conversation I already shared this issue with the loan officer. And I was hoping I can solve the issue, correct my credit score, like, in a timely manner and then we can resume the activity with Bank of America. But I think it was like two or three months, but it's still not finished. And at that time they can only hold this loan for me for a time. They can no longer hold it for me. They cannot wait for me to solve this issue anymore.

Parseghian Decl., Ex. A ("Xu Depo.") at 55:5-18, ECF No. 79-1. That is enough to create a genuine issue of material fact as to whether Defendants' reporting was a substantial factor in Xu's inability to refinance his home loan at a favorable rate with Bank of America.[3] The Court denies Better's motion on this issue.

Second, Better argues that Xu cannot claim "damages for loss of credit opportunities related to investment properties," *see* Better MSJ at 18, including his "inability to qualify for a loan to purchase a second property for use as an income property," *see* FAC ¶ 23, because "damages related to business purposes are not recoverable under the FRCA." Better Reply at 11. Xu counters that Better's legal authority is distinguishable and that rather than seeking to recover for business losses, Xu is seeking losses stemming from his "hope[s] to start earning income to

---

[3] In its Reply, Better argues that Plaintiff cannot rely on inadmissible hearsay that "a Bank of America employee 'advised [Plaintiff] that if it was not for the BMC/TMS report, [Plaintiff] could have qualified for the loan reflected in the Bank of America Loan Estimate dated February 22, 2022." Better Reply at 10 (quoting Xu Decl. ¶ 13, ECF No. 83) (alteration in original). The Court agrees. Fed. R. Civ. P. 56(c). However, because the Court did not rely on this evidence in denying summary judgment on this issue, Better's objection to it is overruled without prejudice to renew the objection in a motion *in limine*.

9

1    support his family by purchasing an investment property," which were dashed by Defendants'

2    reporting. Better Opp'n at 19-20. While the record in this case is unclear as to what damages Xu

3    is seeking, the law is not: damages related to business, commercial, or professional purposes are

4    not within the purview of FCRA. *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044,

5    1081 (C.D. Cal. 2014) (citing cases).

6        FCRA does not apply to business or commercial transactions, even though a consumer's

7    credit report might impact them. *Id.* at 1081 (citing cases). For example, in *Grigoryan*, plaintiff

8    could not recover for damages flowing from the inability to supply credit to his real estate

9    investment business, even though the business suffered losses due to the plaintiff's credit

10   problems. *Id.* at 1083.

11       In contrast, when a plaintiff suffers losses as a *consumer*, including damages to their credit

12   rating, inability to obtain credit, or inability to obtain credit at desirable rates, recovery is allowed.

13   *Id.*, *see also Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (reversing the grant of

14   summary judgment where plaintiff "hoped to start a business" and an inaccurate report caused

15   "several lenders to decline his applications for credit, dashing his hopes of starting a new

16   business") and *Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2023 WL 395790,

17   at *6 (N.D. Cal. Jan. 25, 2023) (discussing *Dennis*).

18       Here, the record is unclear as to whether Xu is like the plaintiff in *Dennis* and seeking

19   losses stemming the from the reduction in his credit rating and his inability to qualify for a loan, or

20   like the plaintiffs in *Grigoryan* and *Dorian*, and is seeking to recover damages from lost real estate

21   investment ventures or rental property income. On the one hand, Xu alleges he sustained losses as

22   a consumer from the "inability to qualify for a loan." FAC ¶ 23. On the other hand, Xu testified

23   at his deposition that he owns three rental properties and that he experienced difficulties

24   purchasing an investment property in Colorado in January 2022 because of his credit. Xu Depo. at

25   17:1-4 ("Q. Do you currently own any rental properties? A. Yes. Q. How many rental properties

26   do you own? A. Three."), 60:11-18 ("Q. Before we get to that did you also attempt to purchase a

27   property in Colorado at that time? A. Yes. Q. And why were you attempting to purchase a

28   property in Colorado at that time? A. I was actively looking for investment opportunities across

the country, yeah, in different states. Colorado was my first option."). As a matter of law, Xu cannot recover any losses suffered from business or commercial transactions, but he may be able to recover losses stemming from his inability to qualify for a loan.

The Court GRANTS Better's motion to the extent Xu is seeking damages connected with any of his rental properties or prospective rental or income properties, but DENIES Better's motion to the extent Xu is seeking damages to his credit rating, inability to obtain credit, or inability to obtain credit at desirable rates.

Third and finally, Better argues that Xu fails to identify evidence that links the embarrassment, anguish, emotional and mental pain he suffered to the reporting and relied instead on conclusory statements. Better MSJ at 18-19, Better Reply at 11-12. Xu contends he need not offer overwhelming evidence of his emotional distress, and the issue cannot be resolved on summary judgment. Better Opp'n at 21-22.

"To survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements." *Robbins*, 2017 WL 6513662, at *19 (citations omitted). At his deposition, Xu stated that he suffered embarrassment or emotional damage related to the negative credit reporting, that he could not sleep well, and that he consulted a doctor. Xu Depo. at 68:5-15 ("Q. Do you believe that you've suffered embarrassment or emotional damage related to this negative credit reporting? A. Yes. Q. And how have you suffered those damages? A. I put a lot of thought into this. And also when I put thought on things I cannot sleep well. And also we have a group of people to discuss investments together, and I was one of the initial there. But due to this issue I could not move forward with them together, and yeah."), 84:9-12 ("Q. Have you had any care from a doctor for any mental or emotional issues during 2022? A. Yes, I think I discussed this with my family doctor."). Therefore, the Court denies Better's motion because Xu has supplied evidence of emotional distress that "reasonably and sufficiently explains the circumstances of his injury" sufficient to survive summary judgment. *Robbins*, 2017 WL 6513662, at *19 (citations omitted).

11

### B. Scope of Money Source's Agency

As stated in the MTD Order, "[a]n agency relationship is created when one entity—the agent—possesses actual or apparent authority to represent another entity—the principal—in dealings with third persons." MTD Order at 4 (citing *Frankl v. HTH Corp.*, 650 F.3d 1334, 1367 (9th Cir. 2011)). "An agency relationship may be created through actual or apparent authority." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017). "Actual authority arises through the principal's assent that the agent take action on the principal's behalf." *Id.* (citation omitted). Better argues that "Plaintiff has no evidence of an express agreement between Better and [Money Source] that shows Better's right to control [Money Source]'s conduct as to reporting credit information" and cites to Plaintiff's response to an interrogatory. Better MSJ at 6. Plaintiff responds by stating that Better, not Plaintiff, should have produced evidence of its contract with Money Source. Better Opp'n at 16-17.

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23. However, here, there is not a complete failure of proof concerning Money Source's actual authority to act on behalf of Better. During discovery, Plaintiff propounded Request for Production No. 7 to Money Source, which seeks documents "concerning any agreements between [Money Source] and [Better] regarding loan servicing in effect between January 1, 2021 and December 31, 2022." Milde Decl. ISO Better Opp'n, Exh. A at 8, ECF No. 84. In response, Money Source says is will produce documents in response and references several documents by bates number. *Id.* While the content of these documents is unclear, they cast doubt on the veracity of Better's assertion that "Plaintiff has no evidence of an express agreement between Better and TMS that shows Better's right to control TMS's conduct as to reporting credit information." Better MSJ at 6. Accordingly, genuine issues of material fact exist as to whether there was an actual authority relationship.

"Apparent [or ostensible] authority arises by a person's manifestation that another has

12

authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Mavrix Photographs, LLC*, 873 F.3d at 1055 (citation omitted). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area in which the agent acts and negotiates." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "In determining whether there was apparent authority, the factual inquiry is the same as in the case of actual implied authority, except that the principal's manifestations to the third person are substituted in place of those to the agent." *Id.* In addition, "[t]he person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief." *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403–04 (2009)

Better argues that Xu cannot establish ostensible agency because his belief that Better authorized Money Source "to report his credit information cannot be traced back to any manifestation" of Better's. Better MSJ at 8. Xu disagrees and refers to the factual record. Better Opp'n at 17-18.

Here, there is a genuine dispute regarding the material fact of whether Better manifested an intent to authorize Money Source as its agent for credit reporting. Better made multiple representations to Xu, both before and after Money Source's reporting. First, Better sent Xu an email telling him to "[f]inish creating your account with The Money Source (TMS)." ECF No. 80-2 at 2. The email stated "[y]our account for [the property] has already been created" and [t]his is how you'll choose your payment method and make monthly payments." *Id.* It also noted Xu should "feel free to reach out to servicingsupport@better.com for any questions." *Id.* Moreover, Xu testified at his deposition that he viewed Better and the Money Source as one unit. Xu Depo. at 48:21-25 ("A. To be honest, I was a little confused, like, Better Mortgage or TMS, what's their

13

relationship. I tried to refer to both of them. I don't know who actually is responsible for this. From my perspective they are both guilty."). Consistent with his confusion, Xu reached out to both Better and Money Source to try to correct the reporting. Xu Depo. at 49:11-24. Viewing this evidence and the inferences to be drawn from them in a light most favorable to Xu, a reasonable jury could find Money Source was authorized to act as Better's agent for numerous purposes related to serving Xu's loan, including credit reporting.

Additionally, Better argues that Xu did not "change his position in reliance on a belief that [Money Source] was Better's agent for purposes of credit reporting." Better MSJ at 8. But here too the record reflects disputed issues of material fact. For instance, in reliance on Better's email telling Xu to finish creating his account with Money Source (TMS), Xu registered for Money Source's borrower portal, enrolled in paperless communication, and successfully submitted a one-time payment online. Based on that same email, Xu believed he was enrolled in automatic payments, thus leading him to miss his December payment, which ultimately led to the report to Trans Union. This is enough to survive summary judgment and thus the Court denies Better's motion as to the existence and scope of Money Source's ostensible authority.

### C. UCL Claim

In its motion, Money Source asserts that Xu's UCL claim is preempted. Money Source MSJ at 11-12. In his opposition, Xu responds that Money Source "may be held liable for violating Section 17200 based on its unlawful conduct in violation of the FCRA, for its fraudulent and deceptive business practices, or both." Money Source Opp'n at 13. The Court ordered supplemental briefing on the issue and the parties submitted additional briefs on July 16, 2025. Xu Suppl. Br., ECF No. 104, Money Source Suppl. Br., ECF No. 105, Better Suppl. Br., ECF No. 106.

"The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999)). It prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

14

1  advertising." Cal. Bus. & Prof. Code § 17200.  "By proscribing 'any unlawful' business practice,

2  section 17200 borrows violations of other laws and treats them as unlawful practices that the

3  unfair competition law makes independently actionable." *Cel-Tech Commc'ns Inc.,* 20 Cal. 4th at

4  180.  Therefore, "[a] defendant cannot be liable under § 17200 for committing 'unlawful business

5  practices' without having violated another law." *Ingels v. Westwood One Broad. Servs., Inc.*, 129

6  Cal. App. 4th 1050, 1060 (2005).

7    FCRA contains a specific preemption provision that states: "[n]o requirement or

8  prohibition may be imposed under the laws of any State—(1) with respect to the subject matter

9  regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who

10 furnish information to consumer reporting agencies."  15 U.S.C. § 1681t(b)(1)(F).  A specific

11 exception to preemption is carved out "with respect to section 1785.25(a) of the California Civil

12 Code."  *Id.*  While the issue appears to be an open question in the Ninth Circuit, district courts in

13 this Circuit have found that FCRA totally preempts UCL claims, *Howard v. Blue Ridge Bank*, 371

14 F. Supp. 2d 1139, 1144 (N.D. Cal. 2005), or preempts all UCL claims but for those "predicated on

15 violations of Section 1785.25(a)."  *Subhani v. JPMorgan Chase Bank, Nat. Ass'n*, No. C 12-01857

16 WHA, 2012 WL 1980416, at *7 (N.D. Cal. June 1, 2012); *see also Khankin v. JLR San Jose, LLC*,

17 720 F. Supp. 3d 816, 826 (N.D. Cal. 2024).  The Court is persuaded by these reasoned decisions

18 and finds that Congress intended FCRA to preempt UCL claims save for those falling under

19 section 1785.25(a) of the California Civil Code.

20   Based on the allegations in the first amended complaint, Xu's claim under the UCL rises

21 and falls with his FCRA claim.  *See* Xu Suppl. Br. at 4 (stating that Defendants' conduct is

22 unlawful under the UCL because "it violates the FCRA and involves misrepresentation"); *see also*

23 MTD Order at 10.  Xu does not appear to bring any claims predicated on section 1785.25(a) of the

24 California Civil Code.  Accordingly, the Court grants Money Source's motion for summary

25 judgment on Plaintiff's claim for violation of Business and Professions Code Section 17200.

26 \ \ \

27 \ \ \

28 \ \ \

1  IV.  **CONCLUSION**

2  Accordingly, the Court:

3  - GRANTS Better's motion for summary judgment to the extent Xu is seeking damages connected with any of his rental properties or prospective rental or income properties, but DENIES Better's motion to the extent Xu is seeking damages to his credit rating, inability to obtain credit, or inability to obtain credit at desirable rates.

- GRANTS Money Source's motion for summary judgment on Plaintiff's claim for violation of Business and Professions Code Section 17200.

- DENIES Defendants' motions for summary judgment in all other respects.

**IT IS SO ORDERED.**

Dated: July 17, 2025

Noël Wise
United States District Judge